CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 3 1 2019

JULIA C. DUDLEY, CLERK
BY: /s/ A. Slagle
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Case No.: 4:18-cr-00011 |
| v. | ) | |
| | ) | |
| | ) | |
| MARCUS JAY DAVIS, et al., | ) | |
| | ) | By: Michael F. Urbanski |
| Defendants. | ) | Chief US District Judge |

## MEMORANDUM OPINION

This matter comes before the court on the government's "First Motion to Obtain Photographs of Defendants' Tattoos Relevant to Gang Affiliation." ECF No. 302. The government asks the court to compel defendants to permit the government to photograph their tattoos and present these photos to the jury at trial as evidence of gang affiliation. For the reasons stated below, the court will **GRANT in part** and **DENY in part** the government's motion. As a preliminary matter, the court notes that this motion applies only to those defendants charged in Count 1 of the Indictment. Id. Thus, to the extent it is relevant, the court **DENIES** the government's motion as it pertains to defendants Shanicqua Latrice Coleman and Tenikqua Fuller.

### I.

"To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty., 542 U.S. 177, 189 (2004). Certain physical traits are not testimonial for purposes of the Fifth Amendment. For example, the government may require a criminal

suspect "to put on a shirt, to provide a blood sample or handwriting exemplar, or to make a recording of his voice." United States v. Hubbell, 530 U.S. 27, 35 (2000) (footnotes omitted); see also United States v. Williams, 461 F.3d 441, 446–47 (4th Cir. 2006) (holding that a demonstration by a defendant that he could not physically wear the fanny pack as alleged by police is not testimonial evidence). As such, "the Fifth Amendment is not offended where a witness relies on a tattoo to identify a defendant." United States v. Greer, 631 F.3d 608, 612 (2nd Cir. 2011).

The government argues that the defendants' tattoos are not testimonial, but "akin to handwriting, voice, and fingerprints." ECF No. 302, at 4. Here, however, the government seeks evidence of defendants' tattoos not for identification purposes, but as evidence of "each defendants' affiliation with, and participation in, the Rollin 60s Crips gang." ECF No. 302, at 1. In other words, the government intends to rely on the tattoos "for the content of what was written." Greer, 631 F.3d at 613 (quoting Gilbert v. California, 388 U.S. 263, 266–67 (1967)). As defendants point out, the court has considered this issue before, in United States v. Jones, 7:16-cr-30026-MFU, and concluded that, because the government seeks to use this evidence for its content, rather than merely for recognition, the tattoo evidence sought is testimonial. See Greer, 631 F.3d at 613; United States v. Ledbetter, 188 F. Supp. 3d 674, 681 (S.D. Ohio 2016) (Where "the government relies on evidence of the defendant's tattoos for the content of the communication—the tattoo is testimonial.") (citations and quotations omitted). And given the nature of the charges in this case, the tattoo evidence is plainly incriminating. Thus, the first two qualifications to invoke Fifth Amendment privilege

2

are present. However, certain of defendants' tattoos do not require government compulsion to be entered into evidence.

The government argues that photographing defendants' tattoos does not violate their Fifth Amendment rights because "voluntary tattooing of incriminating symbols or words on [defendants' bodies] is not the product of government compulsion." Certainly, photographing those tattoos that are immediately visible does not require any compulsion. Tattoos that are "openly visible on [a defendant's] body," United States v. Toliver, 387 F. App'x 406, 418 (4th Cir. 2010) (unpublished),[1] may be presented at trial without infringing on defendants' Fifth Amendment protections. Requiring defendants to submit to photographing openly visible tattoos does not result in compelled communication. See Greer, 631 F.3d at 613; Ledbetter, 188 F. Supp. 3d at 683. Therefore, the government may photograph defendants' openly visible tattoos, including tattoos on defendants' heads, faces, necks, arms, and hands. However, "the process of sharing [a] tattoo, which is not otherwise 'openly visible'...has communicative aspects of its own," and thus would require compulsion to be photographed. Ledbetter, 188 F. Supp. 3d at 683.

Therefore, if the government seeks photographs of tattoos in other locations than those listed above, the government may present evidence indicating that a defendant treated

---

[1] Toliver seemingly conflicts with the rationale in Greer regarding the testimonial nature of tattoos that the government seeks to admit for their communicative purposes. According to Toliver, tattoos offered to show a defendant's gang-affiliation do "not constitute testimony within the meaning of the Fifth Amendment." 387 F. App'x at 417. Toliver is an unpublished opinion and does not bind this court, and the court finds the reasoning set forth in Greer more persuasive than Toliver. That is, tattoos are testimonial if the government seeks to offer them "for the content of what was written." Greer, 631 F.3d at 613. Unlike Greer, Toliver did not separately consider whether the tattoos were "testimonial, incriminating, [or] compelled." Hiibel, 542 U.S. at 189. Nevertheless, Toliver repeatedly characterized the tattoos at issue as "openly visible." Toliver, 387 F. App'x at 417-18. The openly visible nature of the tattoos more aptly weighs on whether the evidence was compelled, not whether it was testimonial. See Greer, 631 F.3d at 613 ("The voluntary tattooing of an incriminating word to Greer's arm was … not the product of government compulsion."). Therefore, the court departs with Toliver's suggestion that tattoos used to show gang affiliation are not testimonial for purposes of the Fifth Amendment.

3

those tattoos as openly visible. For example, the government may show that a defendant did not regularly wear a t-shirt, which would indicate that a tattoo on the defendant's chest was openly visible. To date, however, the government has not presented such evidence. The exhibits offered by the government, while showing several defendants in tank tops and shirtless, do not prove that defendants treated any part of their body apart from their arms, heads, necks, and faces as openly visible, for the reasons discussed below.

## II.

Also at issue are the Fourth Amendment rights of defendants. The Fourth Amendment guarantees that all people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he obtaining of physical evidence from a person involves a potential Fourth Amendment violation," however "the Fourth Amendment provides no protection for what 'a person knowingly exposes to the public, even in his own home or office.'" United States v. Dionisio, 410 U.S. 1, 8, 14 (1973). For this reason, courts have denied Fourth Amendment protection to fingerprints, voices, and faces. See Hayes v. Florida, 470 U.S. 811, 816–17 (1985) (denying protection to defendant's fingerprints); Dionisio, 410 U.S. at 14 (denying protection to defendant's voice); Application of Rodgers, 359 F. Supp. 576, 577 (E.D.N.Y. 1973) (denying protection to photographs of defendant's face). Pretrial detainees retain some Fourth Amendment protections, though their expectation of privacy is diminished. Bell v. Wolfish, 441 U.S. 520, 556 (1979). See also Cantley v. West Virginia Regional Jail and Correctional Facility Authority, 728 F. Supp. 2d 803, 815 (S.D.W. Va. 2010) (holding that a

pretrial detainee who was subjected to a visual cavity strip search stated a claim against the regional jail authority for violation of the Fourth Amendment).

It has been argued that allowing the government to search and photograph defendants' tattoos could violate not only the Fifth Amendment, but the Fourth Amendment as well. Defendants' counsel argued at proceedings held on January 25, 2018 that, because the government has knowledge of only one tattoo on only one defendant and yet seeks to search and photograph all defendants, this search constitutes an unjustified intrusion into defendants' privacy. In analyzing the reasonableness of a physically intrusive search, the court "must balance the government's need for the particular search against the invasion of personal rights entailed by the search." Leverett v. Bell, 247 F.3d 160, 167 (4th Cir. 2001) (citing Bell v. Wolfish, 441 U.S. 520 (1979)). The court has already ruled that a search of any tattoos not openly visible to the public would violate defendants' Fifth Amendment rights. The only photographs taken will be of defendants' heads, faces, necks, arms, and hands. Since these parts of the body are exposed on a day to day basis and invoke no intimate privacy interests, photographs taken of these parts of the body represent no invasion of personal rights.[2]

The government argues that defendants have waived both their Fifth and Fourth Amendment rights by not hiding tattoos located on their chest and legs. For the purposes of the Fifth Amendment, the government argues that defendants are treating the tattoos as

---

[2] Defense counsel argued at the January 25 proceedings that Fifth and Fourth Amendment protections should extend to defendants' arms. The court already ruled in Jones that arms are openly visible such that the Fifth Amendment does not shield them from government photography. Having seen no evidence suggesting that defendants did not treat their arms as openly visible or had a reasonable expectation of privacy that most individuals do not, the court maintains its original position.

5

openly visible. To use Fourth Amendment language, the government would have the court hold that defendants have "knowingly exposed" their tattoos to the public. Dionisio, 410 U.S. at 8. In support of this argument, the government submits a series of photos gathered from social media showing defendants in tank tops or shirtless and argues that all defendants charged with involvement in this criminal enterprise have collectively yielded their applicable constitutional rights. See ECF No. 313.

As a threshold determination, each defendant holds his or her rights independently of other defendants. The court has found no caselaw indicating constitutional rights may be collectively yielded; waiver requires an individual determination per defendant. In the main, the court draws distinction between "the daily revelations of one's voice, face, and fingerprints that are an inevitable part of living in an interactive world," and the occasional removal of a shirt. Pace v. City of Des Moines, 201 F.3d 1050, 1053–54 (8th Cir. 2000). Perhaps it would be possible for an individual to reveal himself from the waist up on such a casual and consistent basis that any reasonable expectation of privacy regarding his chest is waived, but the government has not shown this. The photos submitted show several defendants in tank tops and the occasional shirtless defendant. To find that the chance use of a tank top or removal of a shirt waives all expectations of privacy pertaining to the torso would lead to an untenable result—that every individual who had ever visited a public pool waived Fourth Amendment protections to his or her body. See id. (ruling that an officer's detention and photography of defendant's chest without his consent violated defendant's Fourth Amendment rights) ("Were we to find otherwise, regular visitors to public beaches and swimming pools would be surprised to discover that their visits have cost them the

lasting loss of a reasonable expectation of privacy over very substantial portions of their bodies. We do not believe that any reasonable interpretation of Dionisio and its progeny could lead to such a conclusion.").

The court holds that defendants have no reasonable expectation of privacy to their heads, faces, necks, arms, and hands. The government may photograph all tattoos located on these parts of the body. The Fourth Amendment bars photographs taken beyond these areas. As defendants retain their privacy expectations in the face of the photos submitted by the government, they cannot be said to have treated these parts of the body as openly visible. Thus, defendants have not waived the Fifth Amendment privilege shielding any tattoos located there.

### III.

The court limits the photographs the government may take to defendants' heads, faces, necks, arms, and hands.[3] Once the government has identified the photographs on which it intends to rely at trial, defendants may file motions in limine challenging the admissibility of specific exhibits.

An appropriate Order will be entered.

Entered: 01-31-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

[3] While Toliver allowed evidence of tattoos that "become easily visible were [a male defendant] to wear a tank top or take off his shirt," Toliver, 387 F. App'x at 418, the court finds that an approach similar to that taken in Ledbetter is more protective of defendants' Fifth Amendment rights. See Ledbetter, 188 F. Supp. 3d at 683 (allowing photographs of "tattoos on the defendants' faces, necks, hands, and forearms," but not on "defendants' backs, shoulders, torsos, midsections, legs, and feet").