AUG 0 2 2023

LAURA A. AUSTIN, CLERK

## IN THE UNITED STATES DISTRICT COURT
BY: _____ DEPUTY CLERK
## FOR THE WESTERN DISTRICT OF VIRGINIA
## DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal Action No. 4:18-cr-00011 |
| v. | ) |
| | ) |
| KANAS LAMONT'E TRENT, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant/Petitioner | ) |

## MEMORANDUM OPINION

On December 6, 2022, KaNas Lamont'e Trent, a federal inmate proceeding pro se, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 1490. Because Trent's motion appears to be untimely, the court directed him to file an additional pleading addressing timeliness and Trent did so on January 3, 2023. ECF Nos. 1491, 1503. On April 28, 2023, the government responded to Trent's motion, arguing that he is not entitled to relief, and Trent filed a reply. ECF Nos. 1526, 1535. After reviewing the briefing and the record, the court **DENIES in part** Trent's motions to vacate, set aside, or correct his sentence. The court will appoint counsel to represent Trent at an evidentiary hearing to determine whether Trent asked his attorney to file a notice of appeal on his behalf and if so, the timing of any such request.

## I. Background

On November 6, 2018, Trent, along with eleven codefendants, was named in a 40-count superseding indictment alleging charges related to racketeering. According to the statement of facts (SOF) signed by Trent, he was a member of a criminal organization known as the Rollin 60s Crips ("Rollin 60s"), which is a street gang. Since at least 2015, the

Rollin 60s were active in the Western District of Virginia and engaged in criminal activity, including murder and attempted murder, assault resulting in bodily injury, assault with a dangerous weapon, robbery, obstruction of justice, drug distribution and trafficking, and conspiracy to commit those crimes. SOF, ECF No. 979 at 1–2.

In 2016, members of the Rollin 60s joined forces with another gang, known as the Milla Bloods ("Millas") to facilitate their criminal activities at the expense of a rival gang known as the Billy Bloods ("Billys"). Id. at 3. In August 2016, members of the Rollin 60s and the Millas gathered in Danville, Virginia. Trent did not attend the meeting but later heard about what transpired at the meeting from people who attended. Trent understood that Marcus Davis, the head of the Rollin 60s, and DaShawn Anthony, the head of the Millas, agreed to work together to mutually benefit their respective drug enterprises. Davis also informed the Rollin 60s that they had authority to kill members of the Billys on sight, including the leader of the Billys, Stevie Wallace. Id. at 3.

On August 20, 2016, members of the Rollin 60s, including Trent, and the Millas met in the apartment of one of their members. The group planned to lure Wallace and other members of the Billys to the apartment complex where gang members were fanned out in the complex and an adjoining parking lot with plans to shoot Wallace to death. At 10:30 that evening, a van pulled into the apartment parking lot and gang members started shooting. The passenger in the van, Christopher Motley, was killed in the gunfire, while the driver, Justion Wilson, was not injured. Id. at 4. Trent ran through some woods with other gang members before catching a ride to the gang's neighborhood. Id. at 4–5. The SOF further sets out that Trent conspired with others to distribute and did, in fact, distribute, marijuana

2

on behalf of the racketeering enterprise. Id. at 5. Trent stipulated to the truth of the SOF and acknowledged that if the matter had proceeded to trial, the United States would have proved the allegations beyond a reasonable doubt. Id. at 6.

Trent was charged in 15 counts of the indictment. Superseding Indictment, ECF No. 207 at 1–17. On October 22, 2019, Trent entered into an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), in which he agreed to plead guilty to Counts 1 and 11 of the superseding indictment. Count 1 charged him with racketeering conspiracy, with special sentencing factors, in violation of 18 U.S.C. §§ 1962(d) and 1963. Plea Agreement, ECF No. 977 at 1–2. Count 11 charged that Trent did knowingly use, carry, brandish, and discharge a firearm during and in relation to a crime of violence for which he could be prosecuted in a court of the United States, that is, a violation of Title 18, United States Code, Section 1959(a)(1) as set forth in Count 10 of the indictment, and in the course of violation of 18 U.S.C. § 924(c), caused the death of a person through the use of a firearm, which killing is defined as murder in 18 U.S.C. § 1111(a), all in violation of 18 U.S.C. § 924(j). Count 10 of the indictment charged Trent with violent crime in aid of racketeering, to-wit: murder of Christopher Lamont Motley in violation of Virginia Code §§ 18.2-32 and 18.2-18, all in violation of 18 U.S.C. §§ 2 and 1959(a)(1).[1] Plea Agreement, ECF No. 977 at 2; Superseding Indictment, ECF No. 207 at 13–14.

The government agreed to dismiss any remaining counts at sentencing. Plea Agreement, ECF No. 977 at 3. Both counts carried maximum penalties of life imprisonment. Id. at 1–2. The parties agreed to a sentencing range of 156 to 180 months. Id.

---

[1] Offenses under 18 U.S.C. § 1959, "violent crimes in aid of racketeering," are commonly referred to as VICAR crimes.

at 4. As part of the agreement, Trent waived his right to appeal except for any issue which could not be waived by law and waived his right to collaterally attack his sentence unless the attack was based on ineffective assistance of counsel. Id. at 8–9.

On September 8, 2020, Trent was sentenced to 60 months on Count 1 and 120 months on Count 11, with the sentences to run consecutively for a total of 180 months. His term of incarceration is to be followed by a 5-year term of supervised release. J., ECF No. 1329. Trent did not appeal his sentence.

On December 6, 2022, Trent filed the pending motion to vacate, set aside, or correct his sentence. ECF No. 1490. He argues that his attorney provided ineffective assistance of counsel in two respects. First, he argues that his attorney was ineffective when he did not move to dismiss Count 11 on the ground that the underlying predicate offense is not a crime of violence. Second, he argues that his attorney was ineffective for failing to file a notice of appeal when Trent asked him to do so.

The government counters that (1) Trent waived his claims in the plea agreement; (2) Trent's motion is untimely filed and procedurally barred; (3) Trent's claim that Count 11 is unconstitutional is without merit; and (4) Trent's counsel was not ineffective for failing to file a notice of appeal.

## II. Analysis

To prevail on a claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

4

28 U.S.C. § 2255(a). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

## A. Effect of Waiver

The government argues that Trent waived the claims he is attempting to bring in his § 2255 motion. As part of the plea agreement, Trent agreed to waive his right to appeal his sentence or conviction or to collaterally attack his conviction or sentence. The language of the waiver is broad: "I waive any right I may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel, and I agree I will not file any document which seeks to disturb any such order, unless such filing is based on ineffective assistance of counsel." Plea Agreement, ECF No. 977 at 8. Trent further acknowledged that if he filed any court document, other than an appeal based on an issue not otherwise waived in the agreement, or an appeal based on an issue that cannot be waived by law, or a collateral attack based on ineffective assistance of counsel, seeking to disturb any order imposed in the case, his actions would constitute a failure to comply with a provision of the agreement. Id. at 8–9.

A waiver of appeal and collateral attack is valid if the waiver was knowing and voluntary. In the absence of extraordinary circumstances, a properly conducted Rule 11 colloquy establishes the validity of the waiver. United States v. Adams, 814 F.3d 178, 182 (4th Cir. 2016) (citing United States v. Copeland, 707 F.3d 522, 529 (4th Cir. 2012), and

United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005)). A court also must determine whether the issue appealed is within the scope of the waiver. Copeland, 707 F.3d at 528.

A complete transcript of the guilty plea colloquy held on October 22, 2019, is not included in the record, although a partial transcript of the colloquy is docketed at ECF No. 1176. However, the minutes of the guilty plea hearing held on October 22, 2019, reflect that Trent answered under oath questions from the court regarding his physical and mental condition and also reflect that the court advised him of his rights and the nature and possible consequences of his plea. Minutes, ECF No. 976. Trent also signed a form indicating that his plea was made knowingly and voluntarily and without threat of any kind or promises other than those disclosed in open court. Guilty Plea Form, ECF No. 978. Trent does not argue that that the waiver was made unknowingly or involuntarily. Accordingly, the court finds that the waiver is valid.

The court next must consider whether Trent's challenge to his conviction falls within the scope of the appeal waiver. Trent argues that he received ineffective assistance of counsel when his attorney did not move to dismiss Count 11 of the indictment based on United States v. Davis, 139 S.Ct. 2319 (2019), and United States v. Simmons, 999 F.3d 199 (4th Cir. 2021). He also argues that he received ineffective assistance of counsel when his attorney failed to file an appeal on his behalf although Trent asked him to do so. While a direct attack on his conviction based on Davis and Simmons would fall within the scope of the waiver, Trent's allegation that his attorney was ineffective for advising him to plead guilty to Count 11, in light of Davis and Simmons, does not, because claims of ineffective assistance of counsel were excluded from the waiver. Nor does his allegation that his

6

attorney was ineffective for failing to file a notice of appeal when asked to do so fall within the scope of the waiver. Accordingly, Trent's claims based on ineffective assistance of counsel were not waived in the plea agreement and will be addressed below.

### B. Timeliness of Motion

The government also moves to dismiss Trent's motion as untimely. Petitioners seeking relief under 18 U.S.C. § 2255 must file within the one-year statute of limitations set out in the statute. The period begins to run from the latest of (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

In rare circumstances, a defendant is entitled to equitable tolling of the statute of limitations. See Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (noting that the statute of limitations in federal habeas cases is subject to equitable tolling). "Equitable tolling of petitions for collateral review is available only when a defendant demonstrates '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Whiteside v. United States, 775 F.3d 180, 184 (4th Cir. 2014) (quoting Holland v. Florida, 560 U.S. 631, 649 (2010)). Under the "extraordinary

circumstances" test, a movant must show "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Rouse, 339 F.3d at 246. "Principles of equitable tolling do not extend to garden variety claims of excusable neglect." Id. (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

Trent's conviction became final on September 22, 2020, which was fourteen days after the court entered judgment in his case. See Clay v. United States, 537 U.S. 522, 532 (2003); Fed. R. App. P. 4(b)(1)(A). Using that date as the starting point, the one-year limitations period for filing his § 2255 motion expired on September 22, 2021. Because he did not file his motion until December 6, 2022, approximately fourteen months after the deadline ran, it was untimely under § 2255(f)(1).

Trent asserts that at some point between September 10, 2020, and September 15, 2020, he asked his trial attorney, Michael Hemenway, to file a notice of appeal to challenge his conviction on Count 11 based on the Supreme Court decision in Davis. He claims Hemenway told him he would investigate the matter and note the appeal for the court. Affidavit of Kanas Trent, ECF No. 1490-2. Trent claims that between December 2020 and January 2021, Hemenway assured Trent that he would pursue an appeal on his behalf, notwithstanding the waiver of appeal he filed as part of the plea agreement. Id. Trent claims he told Hemenway that the waiver contained exceptions for challenging the constitutionality of the statute of conviction or challenging his conviction based on intervening changes in law. Id.[2] He asserts that Hemenway informed Trent that he would proceed with the appeal and continued to reassure him from March 2021 through October 2021 that he was working

---

[2] The court notes that the waiver contains no such exception. See Plea Agreement, ECF No. 977 at 8–9.

on the appeal and it would take some time. Id. In May 2022, a family member contacted the District Clerk's office and the Clerk at the Fourth Circuit Court of Appeals and learned that an appeal had not been filed. Id.

In the brief filed in response to the court's direction to address the issue of timeliness, Trent argued that he did not learn until May 7, 2022, that the notice of appeal had not been filed. He also argued that during the COVID pandemic, his facility was locked down and he was denied access to the courts. In addition, Trent argues that he was not aware of the filing deadline for the § 2255 petition and that he placed his confidence in his attorney who "did not advise him on the specifics of this type of motion." Supp. to Mot., ECF No. 1503.

The government responds that Trent's reasons for late filing are not credible, because he has provided no evidence that his attorney reassured him for nine months that an appeal had been filed. In addition, Trent has not explained why, if he learned on May 7, 2022, that his attorney had not filed an appeal, he waited an additional eight months before filing his § 2255 motion. Finally, the government points out that one of Trent's co-defendants, Phillip Miles, has filed a virtually identical § 2255 motion and makes the same claim regarding his late filing, i.e., that between September 12, 2020 and November 2021 he asked his attorney to file a notice of appeal and did not learn until sometime in May 2022 that no appeal had been filed. See ECF No. 1502-1 in United States v. Miles, No. 4:18cr00011 (W.D. Va. Am. Doc. filed Dec. 22, 2022). The government also argues that neither the conditions posed by the COVID-19 pandemic nor Trent's lack of awareness of the filing deadlines provides a basis for excusing the late filing.

To the extent Trent seeks equitable tolling of the statute of limitations based on COVID-19 or his lack of understanding of the one-year statute of limitations for filing a § 2255 motion, he is not entitled to relief. He avers very broadly, without specifying dates, that during the pandemic he was denied access to the courts and "respectable access to the record keeping legal mail procedure at [the] institution." Supp. Mot., ECF No. 1503 at 1. He said that FCI Gilmer, where he is housed, experienced multiple COVID-19 outbreaks throughout the period he had to file his motion, and at times, the institution was locked down and inmates had restricted access to legal resources. However, courts routinely find that lockdowns, restricted access to the law library, and an inability to secure court documents do not qualify as extraordinary circumstances for tolling a federal habeas statute of limitations. United States v. Piner, No. 3:18cr15, 2022 WL 1720358, at *3 (E.D. Va. May 27, 2022) (citing Allen v. Johnson, 602 F.Supp.2d 724, 727–28 (E.D. Va. 2009)). Inmates who cite the pandemic as a reason for late filing cannot show that they are entitled to equitable tolling of the statute of limitations unless they describe the specific actions they took to attempt or prepare to file a § 2255 motion while the limitations period was pending. United States v. Turner, No. 3:18CR158, 2021 WL 3934322, at *3 (E.D. Va. Sept. 2, 2021). See also Orme v. City of Charleston, No. 2:22-cv-00092, 2022 WL 17881149, at *3 (S.D.W.V. Oct. 17, 2022) (noting that several courts have held that a petitioner cannot show that he is entitled to equitable tolling "simply by making passing reference to the pandemic or resulting lockdown.") (citing United States v. Aigbekaen, Crim. No. JKB-15-0462, 2021 WL 1816967, at *1 (D. Md. May 6, 2021)). Because Trent has not explained what efforts he

took to file his § 2255 motion while the limitations period was pending, he cannot show that he is entitled to equitable tolling based on the pandemic.

In addition, the fact that Trent was unaware of the filing deadline does not warrant equitable tolling of the statute of limitations. "[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004)). "Stated differently, [a petitioner's] misconception about the operation of the statute of limitations is neither extraordinary nor a circumstance external to his control." Id. Accordingly, Trent also is not entitled to equitable tolling based on his lack of understanding of the tolling deadline.

Regarding Trent's assertion that he did not learn that his attorney did not file his appeal until May 7, 2022, he appears to be arguing that under § 2255(f)(4), the statute of limitations did not begin to run until that day. For purposes of § 2255(f)(4), the statute of limitations begins to run when the petitioner knows, or through the exercise of due diligence could have discovered, the important facts and not when he recognizes their legal significance. United States v. Caro, 683 F. App'x 232, 233 (4th Cir. 2008) (citing Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)). The test under § 2255(f)(4) is an objective one, requiring in this case for the court to determine when a duly diligent person in the petitioner's circumstances would have discovered that his attorney had not filed an appeal on his behalf. See Hannigan v. United States, 131 F.Supp.3d 480, 488 (E.D. N.C. 2015) (citing Wims. V. United States, 225 F.3d 186, 190 (2d Cir. 2000)). Due diligence does not require maximum feasible diligence, but only reasonable diligence. A petitioner need not exhaust every imaginable option but should make reasonable efforts. United States v. Longshore,

11

644 F.Supp.2d 658, 661 (D. Md. 2009) (citing Aron v. United States, 291 F.3d 708, 712 (11th

Cir. 2002) and Wims, 225 F.3d at 190 n. 4).

Trent alleges that he asked his attorney to file a notice of appeal on his behalf during

the 14-day window for filing the appeal and that his attorney said he would investigate the

claim and file the notice of appeal. Trent claims that he made additional inquiries of his

attorney between December 2020 and October 2021 and his attorney continued to reassure

him that the appeal had been filed. He claims that he did not learn until May 7, 2022, that

the appeal had not been filed and that he thus had until May 7, 2023, to file this § 2255

petition. Because he filed it on December 7, 2022, he argues that it was timely filed.

Although the government argues that Trent's claims are not credible, it provided no

evidence to rebut his assertions. Trent made his allegations under penalty of perjury and

nothing in the record contradicts them. Supp. Mot., ECF No. 1490-2. The Fourth Circuit

has held that "[u]nless it is clear from the pleadings, files, and records that the prisoner is not

entitled to relief, § 2255 makes an evidentiary hearing mandatory." United States v. Stokes,

112 F. App'x. 905, 906 (4th Cir. 2004). As discussed below, because an attorney renders

ineffective assistance if he does not file a notice of appeal when a client asks him to do so,

justice requires that an evidentiary hearing be held so that the court may determine whether

Trent asked Hemenway to file an appeal on his behalf, and if so, when. The hearing will

address only the timeliness of Trent's claim that his attorney was ineffective for failing to file

a notice of appeal on his behalf because it is clear that his attorney was not ineffective for

failing to challenge Count 11.

12

## C. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" Gray, 529 F.3d at 228 (quoting Strickland, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689.

In the context of failure to file a notice of appeal, the Supreme Court has held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). This is true even when a defendant has waived the right to appeal as part of a plea agreement. Garza v. Idaho, 139 S.Ct. 738, 747 (2019); United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007). Filing a notice of appeal is a "purely ministerial task that imposes no great burden on counsel." Flores-Ortega, 528 U.S. at 474. It typically takes place during a compressed period of time and the defendant likely will not have important documents from the trial court and may well be in custody, making communication with counsel difficult.

13

Garza, 139 S.Ct. at 745. Filing requirements are simple, reflecting that claims are likely to be ill-defined or unknown at this stage. Id. The defendant has the authority to decide whether to file a notice of appeal, while appellate counsel decides what specific arguments to make. Id. at 746. "In other words, filing a notice of appeal is, generally speaking, a simple, nonsubstantive act that is within the defendant's prerogative." Id.

To satisfy the prejudice prong of Strickland, a defendant generally must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. However, "when counsel fails to file a requested appeal, a defendant is entitled to an appeal without showing that his appeal would likely have had merit." Peguero v. United States, 526 U.S. 23, 28 (1999) (citing Rodriquez v. United States, 395 U.S. 327, 329-330 (1969)).

**(1) Constitutionality of Count 11**

Trent argues that Hemenway was ineffective for failing to move to dismiss Count 11 as unconstitutional because the underlying predicate offense was not a "crime of violence" for purposes of conviction under 18 U.S.C. § 924(j), citing in support Davis and Simmons. However, neither of these cases offers Trent any relief.

Section 924(c) authorizes higher penalties for defendants convicted of using or carrying a firearm "during and in relation to," or possessing a firearm "in furtherance of," any federal "crime of violence or drug trafficking crime." Davis, 139 S.Ct. at 2324 (citing § 924(c)(1)(A)). The statute defines the term "crime of violence" in two subparts as follows:

> (3) For purposes of this subsection the term "crime of violence"
> means an offense that is a felony and—

14

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c). Section 924(c)(3)(A) is known as the "force clause" or "elements clause," and § 924(c)(3)(B) is known as the "residual clause." Davis, 139 S.Ct. at 2324; United States v. Roof, 10 F.4th 314, 398 (4th Cir. 2021). Following the Supreme Court precedent set in Johnson v. United States, 576 U.S. 591 (2015), and Sessions v. Dimaya, 138 S.Ct. 1204 (2018), the Court held in Davis that the "residual clause" of § 924(c)(3)(B) was unconstitutionally vague. See discussion, Davis, 139 S.Ct. 2325–2336.

Trent asserts, correctly, that with the residual clause declared unconstitutional, the issue in his case is whether his predicate offense is a "crime of violence" under the force clause. Trent also asserts, correctly, that RICO conspiracy is not considered a "crime of violence" for purposes of the force clause in § 924(c). In Simmons, the Fourth Circuit applied the categorical approach to the RICO conspiracy statute, 18 U.S.C. § 1962(d), and determined that convictions for RICO conspiracy and aggravated RICO conspiracy are not crimes of violence for purposes of 18 U.S.C. § 924(c) because they can be committed without the use, attempted use, or threatened use of physical force. See discussion, Simmons, 11 F.4th at 253–261.

However, neither Davis nor Simmons supports the conclusion that Trent's Count 11 conviction was unconstitutional, because his § 924(j) conviction was not predicated on his Count 1 RICO conspiracy conviction. Rather, it was predicated on Count 10 of the

15

Indictment, "Violent Crime in Aid of Racketeering, to-wit: Murder of Christopher Lamont

Motley." Superseding Indictment, ECF No. 207 at 13–14. The relevant language from Count

10 is the following:

> On or about August 20, 2016, in the Western District of
> Virginia, for the purpose of maintaining and increasing position
> in the Rollin 60s, an enterprise engaged in racketeering activity,
> … KANAS LAMONT'E TRENT … did murder Christopher
> Lamont Motley, in violation of Virginia Code Sections 18.2-32,
> 18.2-18.
>
> All in violation of Title 18, United States Code, Sections 2 and
> 1959(a)(1).

Id. The Fourth Circuit has held that VICAR murder is a crime of violence for purposes of §

924(c).[3] United States v. Mathis, 932 F.3d 242, 265 (4th Cir. 2019). See also United States v.

Bran, No. 3:12CR131, 2021 WL 4099011, at *4 (E.D. Va. Sept. 8, 2021) (finding that

conviction for VICAR murder served as valid predicate offense for conviction under 18

U.S.C. §§ 924(c)(1)(A) and (j)); United States v. Davis, No. 4:18-cr-11, 2019 WL 3307235, at

*3–7 (W.D. Va. July 23, 2019) (rejecting argument that murder, whether defined generically

or as set forth in Va. Code § 18.2-32, is not a crime of violence for purposes of §

923(c)(3)(A)); and Gordillo Portocarrero v. United States, No. 1:16-cv-00763 (LMB), No.

1:10-cr-00066-1 (LMB), 2019 WL 181119, at *7–8 (E.D. Va. Jan. 11, 2019) (finding that

attempted murder is a crime of violence under the force clause set forth in § 924(c)(3)(A)).

Accordingly, Trent cannot rely on the fact that RICO conspiracy is not a crime of violence

---

[3] It is not relevant that Trent was convicted under § 924(j) rather than § 924(c) because § 924(c) contains the controlling definition for § 924(j). Roof, 10 F.4th at 398. Also, because the definition of "crime of violence" in § 924(c) is almost identical to the definition of "violent felony" in the Armed Career Criminal Act (ACCA), decisions interpreting one such definition are persuasive as to the meaning of others. Id., n.61.

for purposes of his § 924(c) conviction, because the predicate offense in his case was not RICO conspiracy but VICAR murder.[4]

Accordingly, because there was no constitutional basis for Hemenway to seek dismissal of Count 11, he was not ineffective for failing to do so. Trent's argument to the contrary is without merit and therefore this claim is **DISMISSED**.

### (2) Failure to File Appeal

As discussed above, because it is well-established that an attorney who disregards instructions from a defendant to file a notice of appeal acts in a professionally unreasonable manner and a defendant need not show that an appeal would have merit, the court must determine if Trent asked his attorney to file a notice of appeal and if so, when he made the request. Accordingly, counsel will be appointed to represent Trent at an evidentiary hearing, where the issues will be limited to whether Trent asked Hemenway to file a notice of appeal on his behalf and the timing of any such request.

### III. Conclusion

Based on the foregoing, the court **DENIES in part** Trent's § 2255 motion to vacate, set aside, or correct his sentence, ECF No. 1490. Trent's ineffective assistance of counsel claim based on Hemenway's failure to object to the constitutionality of Count 11 is **DISMISSED**. The court will appoint counsel to represent Trent at an evidentiary hearing to

---

[4] Nor does the Supreme Court decision in <u>Borden v. United States</u>, 141 S.Ct. 1817 (2021), offer Trent any relief. In <u>Borden</u>, the Supreme Court held that a criminal offense that requires only a <u>mens rea</u> of recklessness cannot count as a "violent felony" under the elements clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(i). <u>Borden</u>, 141 S.Ct. at 1834. This is because such offenses "do not require, as the ACCA does, the active employment of force against another person. And they are not the stuff of armed criminals." <u>Id.</u> In <u>United States v. Manley</u>, 52 F.4th 142 (2022), the Fourth Circuit looked at whether VICAR assault and VICAR murder must be committed with a sufficiently culpable <u>mens rea</u> to amount to crimes of violence necessary for conviction under 18 U.S.C. § 924(c) and concluded that both crimes require a <u>mens rea</u> greater than recklessness. Therefore, they are considered crimes of violence for purposes of §§ 924(c) and 924(j).

determine whether Trent asked his attorney to file a notice of appeal on his behalf and if so, the timing of the request. An appropriate Order will be entered. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to Trent.

It is so **ORDERED**.

Entered: August 2, 2023

Michael F. Urbanski
Chief United States District Judge

18